Kevin MOBLEY, et al., Petitioners

v.

Brian COLEMAN, Superintendent; Debra Hawkinberry, Corrections Classification & Program Manager; Frank Lewis, Facility Chaplain Program Director; Ulli Klemm, Bureau of Treatment Services; John/Jane Doe(s), Religious Accommodation Review Committee; John Wetzel, Secretary of Corrections; et al., Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 22, 2013.

Decided March 27, 2013.

Kevin Mobley and Rolland Bryant, pro se.

Raymond W. Dorian, Assistant Counsel, Mechanicsburg, for respondents.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI.

Kevin Mobley (Mobley), an inmate at the State Correctional Institution–Fayette (SCI–Fayette), filed a class action [1] on behalf of himself and other inmates (Petitioners) who are members of the Nation of Islam (NOI) against a number of officials from the Pennsylvania Department of Corrections (collectively, Respondents) alleging violations of the United States and Pennsylvania Constitutions, the federal Religious Land Use and Institutionalized Person Act (RLUIPA),[2] and the Pennsylvania Religious Freedom Protection Act (Act).[3] The complaint avers that NOI

1. Even though this action is a class action for purposes of preliminary objections, Mobley is the only party that is now before us. While apparently not addressed by Pennsylvania courts, we note that the federal courts in addressing substantially similar class action requirements have held that a prisoner proceeding *pro se*, such as Mobley, may not commence a class action lawsuit. *See, e.g., Awala v. New Jersey Dept. of Corrections*, 227 Fed. Appx. 133, 134 (3d Cir.2007) (affirming the District Court where the District Court dismissed Awala's complaint and amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b) concluding that a *pro se* prisoner without formal training in the law would not be able to adequately represent the interests of the class and maintain the suit as a class action); *Caputo v. Fauver*, 800 F.Supp. 168, 170 (D.N.J.1992), *aff'd*, 995 F.2d 216 (3d Cir. 1993) (stating that "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action."). Hence, any putative class action claims should be dismissed.

2. 42 U.S.C. § 2000cc. The RLUIPA provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc–1(a)(1)–(2). To support a claim under the RLUIPA, a plaintiff must produce prima facie evidence that the defendant substantially burdened his exercise of religion; he also bears the burden of persuasion on whether the policies and regulations substantially burden the same. 42 U.S.C. § 2000cc–2(b). *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir.2004). A "religious exercise" for purposes of the RLUIPA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

3. Act of December 9, 2002, P.L. 1701, *as amended*, 71 P.S. §§ 2401–2407. The Act is substantially the same as RLUIPA. With regard to prisoners, 71 P.S. § 2405(g) provides "[t]o the extent permitted under the Federal law, an agency shall be deemed not to have

members have been unconstitutionally and illegally denied separate worship services and that Respondents "compel [them] to 'support and attend'" contradictive, Sunni Muslim services at the prison when Sunni Muslims consider "NOI beliefs, teachings, and practices to be blasphemy, sacrilegious [sic] and contradictive" to their beliefs and do not consider NOI adherents to be true Muslims. (Complaint at 8–9.) Mobley alleges that Respondents know and understand these principles, yet "have forced hostile religious enemies of the NOI and Sunni Islam groups to combine their religions and commanded religious practices into one broad Islamic group." *Id.* at 10. On the basis of these facts, the complaint alleges that Respondents violated the rights of Mobley and other NOI adherents. As relief, the complaint seeks, among other things, an injunction ordering Respondents to "end the [Respondents'] special religious practices against the [Petitioners] ... [d]enying the NOI prisoners from observing their commanded religious practices," *id.* at 12, injunctive relief allowing

certain NOI services and materials at SCI–Fayette, and monetary damages.

Respondents have filed preliminary objections contending that Mobley's complaint should be dismissed because:

(a) [Mobley] is not entitled to a separate religious service for [NOI] inmates;

(b) There are legitimate penological reasons why SCI–Fayette does not provide separate religious services for [NOI] inmates, namely time and space restraints;

(c) The lack of separate services for [NOI] inmates does not substantially burden [Mobley's] exercise of his religious beliefs;

(d) [Mobley] has not alleged violations of ... RLUIPA ...;

(e) State prison officials cannot be held personally liable under RLUIPA;

(f) The lack of separate services for [NOI] inmates does not violate the U.S. Constitution or the Pennsylvania Constitution.

(Preliminary objections dated May 29, 2012, at 2–3.)[4]

---

violated the provisions of this act if a rule, policy, action, omission or regulation of a correctional facility or its correctional employees is reasonably related to legitimate penological interests, including the deterrence of crime, the prudent use of institutional resources, the rehabilitation of prisoners or institutional security."

4. We note that Respondents have not alleged that Mobley has not followed the procedure set forth in DC–ADM 819 which provides, in relevant part, that requests for religious accommodation were to be made as follows:

 a. Each inmate must use a **DC–52, Inmate Religious Accommodation Request Form** ... to submit his/her request for accommodation to the FCPD [Facility Chaplaincy Program Director].

 \* \* \*

 c. The inmate shall obtain written information from his/her outside faith group, including any publications that describe the goals, beliefs, and practices of the group

and supply this information to the FCPD for review.

 d. The Religious Accommodation Review Committee shall review each inmate's request for a religious accommodation within 45 days of receipt and forward a recommendation to the affected Regional Deputy Secretary.

 e. The Regional Deputy Secretary shall, within 15 days of receiving the recommendation from the Director of the Bureau of Inmate Services/designee, approve/disapprove the request and notify the Director of the Bureau of Inmate Services of the decision.

 f. The Director, Bureau of Inmate Services shall, within 10 days, inform the Facility Manager and the FCPD of the requesting facility of the determination and ensure copies of all final determinations are provided to all Deputy Secretaries and Facility managers. The FCPD shall be responsible for informing the affected inmate of the outcome of his/her request no later than 10

## I.

■ The United States and the Pennsylvania Constitutions both guarantee individuals the right to worship freely and to be free of government compulsion to support any faith. *See* U.S. CONST. amend. XIV; PA. CONST., art. I, § 3. In a prison environment, however, "prison officials are given a wide range of discretion in the promulgation and enforcement of rules to govern the prison community in order to maintain security, order and discipline." *Maute v. Frank*, 670 A.2d 737, 739 (Pa. Cmwlth.1996). Thus, inmates' rights may be curtailed where prison officials, "in the exercise of their informed discretion, reasonably conclude that those rights possess the likelihood of disrupting prison order or stability or otherwise interfering with the legitimate penological objectives of the prison environment." *Id.* at 740. In determining whether Respondents have violated Petitioners' rights to freedom of religion by denying religious accommodation, we must consider: (1) whether the inmates' belief is sincere and truly religious in nature; (2) whether there is a rational connection between the institution's refusal to provide the accommodations sought and a legitimate penological interest; and (3) whether "the refusal is reasonable in light of the penological interest, the inmate's interest, and the overall effect on the pris-

on community in granting the request, and the availability of ways to accommodate the request at a *de minimis* cost." *Miles v. Beard*, 847 A.2d 161, 166 (Pa.Cmwlth. 2004), *appeal denied*, 582 Pa. 690, 870 A.2d 325 (2005); *DeHart v. Horn*, 227 F.3d 47 (3d Cir.2000).[5] However, when an inmate challenges an action taken by prison officials, the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

■■ In their preliminary objections, Respondents do not dispute the sincerity or religious nature of NOI adherents' beliefs. Rather, they assert that the lack of separate services at SCI–Fayette for NOI inmates is based upon legitimate penological interests, namely, time and space restraints, safety, security and resource concerns. They assert that due to time and space limitations, they cannot safely offer faith group recognition for every religious group that desires it. Courts have recognized such limitations as legitimate reasons for failing to provide separate group worship services for different faiths. *See, e.g., Clifton v. Craig*, 924 F.2d 182 (10th Cir.), *cert. denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). "The require-

working days from the date that the determination of approval/disapproval is received.

g. If an inmate is informed by the FCPD that the request will not be accommodated, the inmate may then file a grievance in accordance with Department policy **DC–804, "Inmate Grievances."** Grievances may only be submitted after the inmate has received notification of the decision on the requested accommodation.

(Emphasis in original).

5. The generic test used to determine whether a policy that may impinge on a person's constitutional rights is related to a legitimate penological interest is: (1) whether there is a

"valid, rational connection" between the prison regulation and the legitimate, neutral, governmental interest advanced to justify the regulation; (2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at a *de minimis* cost to valid penological objectives. *Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *see also Humphrey v. Department of Corrections*, 939 A.2d 987 (Pa.Cmwlth. 2007).

ment that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir.1970); *see also Smith v. Kyler*, 295 Fed.Appx.479, 481 (3d Cir.2008), *cert. denied*, 557 U.S. 924, 129 S.Ct. 2837, 174 L.Ed.2d 561 (2009) (holding that an inmate's free exercise rights were not violated by the Department of Corrections' policy to provide Chaplains for only broad faith groups). Moreover, it is a valid penological reason not to provide separate services for every denomination of a broader religious faith given the time and prison resources that would be expended on such an endeavor. *Odneal v. Dretke*, 435 F.Supp.2d 608 (S.D.Tex.2006), *aff'd in part*, 324 Fed. Appx. 297 (5th Cir.2009) (holding that security, staff and resource concerns represent legitimate penological interests in not providing a separate service. Budgetary constraints also constitute a valid penological interest, and restricting religious-based services has been held to be rationally related to that interest.) *See Smith*, 295 Fed.Appx. at 481 ("the [Department of Corrections] has a legitimate interest in managing limited financial resources and in maintaining prison security.")

■ While all of those concerns set forth in their preliminary objections are valid penological interests that could justify their position, those reasons cannot be advanced because when considering a demurrer, a court cannot consider matters collateral to the complaint, but must limit itself to such matters as appear therein, and an effort to supply facts missing from the objectionable pleading makes the preliminary objection in the nature of a demurrer an impermissible "speaking demurrer." *Stilp v. Commonwealth*, 910 A.2d 775 (Pa.Cmwlth.2006); *see also Regal Industrial Corporation v. Crum & Forster, Inc.*, 890 A.2d 395, 398 (Pa.Super.2005) (defining a speaking demurrer as one which requires the aid of a fact not appearing on the face of the pleading being objected to and noting that a speaking demurrer cannot be considered in sustaining preliminary objections). Moreover, even if we considered those facts, nothing in their preliminary objections addresses the other *Miles* factors. Accordingly, Respondents' preliminary objections to Mobley's constitutional claims under the United States and Pennsylvania Constitutions that his constitutional rights to freedom of religion are overruled.

## II.

■ Respondents also contend that Mobley's petition has made out that there is a substantial burden upon the practice of his religious beliefs necessary to make out a claim under RLUIPA or the Act. A governmental action or regulation creates a substantial burden on religious exercise if it truly pressures the offender to significantly modify his religious behavior and greatly violates his religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559, 567, 569–70 n. 37 (5th Cir.2004), *cert. denied*, 545 U.S. 1104, 125 S.Ct. 2549, 162 L.Ed.2d 275 (2005). Specifically:

[T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, nontrivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, government action or regulation does not rise to a level of a substantial burden on religious ex-

ercise if it merely prevents the adherent from enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Id.* at 570.

 The only substantial burden Mobley claims is that Respondents have failed to allow NOI adherents to hold separate religious services and have treated them differently from adherents of other religions by failing to recognize NOI as a faith group in not allowing separate group worship services. While Mobley avers that Petitioners have "compelled" NOI adherents to "support and attend" Sunni Muslim religious practices, some of whose beliefs are at odds with those of NOI adherents, which, if true, would be a substantial burden and a violation of the federal and state constitutions, a fair reading of his complaint reveals that he has not been compelled by coercion, but by the unavailability of NOI-specific activities at SCI–Fayette. As the United States Supreme Court has stated, "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Moreover, he has not pled that he is unable to privately worship, that he is not allowed to associate with other NOI members, or that he is not allowed access to NOI texts or other religious items associated with his religion.[6] It is not the responsibility of the prison to provide Mobley with access to others of his specific faith for ceremonies of worship. Because it is not the responsibility of the Department of Corrections to provide services for every faith of every inmate in its facilities, and because Mobley has failed to allege any other burden placed on the exercise of his religion, he has failed to plead a violation of RLUIPA or the Act.[7]

Accordingly, we overrule Respondents' preliminary objections to Mobley's claim that the lack of separate worship services for NOI adherents amounts to a violation of the United States or Pennsylvania Constitutions but sustain its preliminary objection that he did not make out a claim under RLUIPA or the Act.

### ORDER

AND NOW, this *27th* day of *March,* 2013, Respondents' preliminary objection to Mobley's contention that the lack of separate worship services is a violation of the United States or Pennsylvania Constitutions is overruled. Respondents' preliminary objections that Mobley failed to

---

6. Similarly, Respondents argue that Mobley has not shown irreparable harm or injury caused by the lack of NOI services at SCI–Fayette; Mobley alleges in the petition that Respondents' "special religious practices against [Petitioners] have caused irreparable injury [or] harm for the past 6 years by denying and banning the [NOI'S] commanded religious practices and materials." This assertion, without any specificity, does not establish that Mobley has been irreparably harmed by the lack of separate services for NOI practitioners, as we have established that they are not prevented from private worship.

7. Respondents also contend that state prison officials cannot be held liable under RLUIPA. While we need not address that issue because we have sustained Respondents' preliminary objection that Mobley has not made out a claim under that Act, we note that federal courts have consistently held that RLUIPA does not permit actions against government employees in their individual capacities. *Sharp v. Johnson,* 669 F.3d 144, 153 (3d Cir. 2012); *Nelson v. Miller,* 570 F.3d 868 (7th Cir.2009); *Rendelman v. Rouse,* 569 F.3d 182, 186–89 (4th Cir.2009); *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 327–29 (5th Cir.2009).

make out a claim under the federal Religious Land Use and Institutionalized Person Act or the Pennsylvania Religious Freedom Protection Act is sustained. Respondents shall file an answer within 30 days of the date of this order in response to Mobley's claims that his right to free exercise of his religion is being unconstitutionally infringed.

Judge McCULLOUGH concurs in the result only.