# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|                                    |   |                              |
|------------------------------------|---|------------------------------|
| Eugene Myrick,                     | : |                              |
| Appellant                          | : |                              |
|                                    | : |                              |
| v.                                 | : | No. 1300 C.D. 2016           |
|                                    | : | Submitted: December 16, 2016 |
| Rafeal Torres, Ulli Kllemm,        | : |                              |
| Pennsylvania Department of         | : |                              |
| Corrections, Dorina Varner         | : |                              |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: May 1, 2017**


Eugene Myrick (Myrick), representing himself, appeals from an order of the Court of Common Pleas of Montgomery County (trial court) denying his petition to proceed *in forma pauperis* (IFP) pursuant to Pa. R.C.P. No. 240(j)(1), which in effect dismissed his complaint. Myrick's complaint asserted the Department of Corrections (DOC) and named employees (collectively, Appellees)[1] violated his First Amendment right to free exercise of his religion as a Seventh-day Adventist. Because Myrick fails to state a cause of action in his complaint, we affirm.


## I. Background

Myrick, an inmate incarcerated at the State Correctional Institution at Graterford, is a member of the Seventh-day Adventist religion. He submitted

---

[1] Named employees include Rafeal Torres, Chaplain at SCI-Graterford, Ulli Klemm, a Bureau of Treatment official, and Dorina Varner, Chief Grievances examiner.

grievances to prison officials complaining about the reduction in the number of choir practices for his religion from twice a week to once a week. He also alleged Rafeal Torres, the Chaplain Program Director, favored Latin music and services. Appellee Ulli Klemm fully investigated Myrick's grievances and found no discrimination. Klemm advised that the reduction in choir practices was consistent with the time allotted to other religious groups to manage their frequency.

Myrick filed a complaint against DOC and named Appellees in their official and individual capacities, seeking monetary damages for discriminating against his religion and violating his due process rights. Specifically, he complained the reduction of choir practices and the replacement of Christian ushers with Latin ushers for services was discriminatory. He grieved these concerns through DOC's grievance process, and he appended the grievances and responses to his complaint.

Contemporaneous with the filing of his complaint, Myrick filed a petition to proceed IFP (IFP Petition). The trial court denied the IFP Petition, stating the lawsuit was frivolous under Pa. R.C.P. No. 240(j)(i). This, in effect, dismissed his complaint. Myrick filed a notice of appeal to this Court.

In response to Myrick's concise statement of the errors complained of on appeal under Pa. R.A.P. 1925(b), the trial court issued its Rule 1925(a) opinion. It reasoned DOC presented legitimate penological reasons for reducing the number of choir practices. It emphasized Myrick did not allege a deprivation of the right to attend religious services; rather, he complained about the manner in which services were conducted. Thus, the trial court concluded Myrick's claims were frivolous.

2

## II. Discussion

On appeal,[2] Myrick argues the trial court erred in dismissing his complaint under Rule 240(j). He asserts he alleged a viable claim against Appellees for discrimination and violating his First Amendment right to exercise his religion. He maintains the trial court erred in considering the merit of his complaint when only the IFP Petition was before it. Myrick also contends the trial court denied him access to the courts when it did not allow him to amend his claims if needed.

Rule 240(j) provides, in pertinent part:

(1) If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed [IFP], the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

Pa. R.C.P. No. 240(j)(1) (emphasis added). "A frivolous action … 'lacks an arguable basis either in law or in fact.'" Jones v. Doe, 126 A.3d 406, 408 (Pa. Cmwlth. 2015) (citation omitted) (holding inmate failed to state a claim for violation of First Amendment right to privileged communication by opening his legal mail.) "An action is frivolous under Pa. R.C.P. No. 240(j)(1), if, on its face, it does not set forth a valid cause of action." Bennett v. Beard, 919 A.2d 365, 367 (Pa. Cmwlth. 2007).

---

[2] Our review of a trial court's order dismissing an action pursuant to Pa. R.C.P. No. 240(j) is limited to determining whether an appellant's constitutional rights were violated and whether the trial court abused its discretion or committed an error of law. Jones v. Doe, 126 A.3d 406 (Pa. Cmwlth. 2015).

3

Here, the trial court concluded Myrick did not state a valid cause of action for violation of his First Amendment rights in his complaint.[3] We agree.

At the outset, we note, in his uncounseled brief,[4] Myrick argues the trial court erred in dismissing his complaint when only the IFP Petition was before it. In so doing, Myrick misapprehends the trial court's authority under Rule 240(j) to dismiss a complaint at the IFP stage when it is frivolous. The merit of Myrick's IFP Petition is irrelevant to the issue before us.

## A. Merits of Claim

The issue before this Court is limited to the merit of Myrick's civil rights claim. As to that issue, Myrick argues that Torres "infringe[d] upon [his] religious rights in violation of the [Pennsylvania] and U.S. Constitutions." Appellant's Br. at 8.

"The United States and Pennsylvania Constitutions both guarantee individuals the right to worship freely and to be free of government compulsion to support any faith." Mobley v. Coleman, 65 A.3d 1048, 1052 (Pa. Cmwlth. 2013) (citing U.S. CONST. amend. XIV, PA. CONST., art. I, §3). Pursuant to the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof …." U.S. CONST. amend. I.

---

[3] To the extent Myrick alleges a violation of his Eighth Amendment rights, his claim is predicated on the same acts he alleges violate his First Amendment rights. Muhammad's Temple of Islam v. Dep't of Corr. (Pa. Cmwlth., No. 1418 C.D. 2010, filed July 26, 2011) (unreported).

[4] "[A]n uncounseled litigant is not to be given any particular advantage because of his lack of knowledge of the law." Young v. Estate of Young, 138 A.3d 78, 87 (Pa. Cmwlth. 2016).

However, based on his conviction and incarceration, an inmate has diminished civil rights. Wise v. Dep't of Corr., 690 A.2d 846 (Pa. Cmwlth. 1997). An inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Mobley. Time, resources, space and budgetary constraints are properly considered when making decisions regarding religious services. Mobley. While the state may not impose barriers to religious exercise, it is not required to provide every inmate with the religious services of his choice. DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000). Moreover, when an inmate challenges a prison official's action, it becomes his burden to disprove the validity of the action. Mobley.

"In a free exercise of religion claim, the threshold requirements for religious beliefs to be accorded [F]irst [A]mendment protection are that the beliefs avowed be[:] 1) sincerely held[;] and[,] 2) religious in nature …." Meggett v. Dep't of Corr., 856 A.2d 277, 279-80 (Pa. Cmwlth. 2004) (citing Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir.1981), cert. denied, 456 U.S. 908 (1982)). Only when these two requirements are met does the court consider whether a legitimate state interest outweighs the proffered First Amendment claim. Id.

Significantly, Myrick does not allege he was precluded from exercising his religion. Rather, he complains as to the frequency of choir practices, and that Latin ushers replaced "Christian ushers," showing a preference for Latinos. Certified Record, Item No. 1 (Complaint at ¶28); see also Appellant's Br. at 10 (asserting "[L]atin/[H]ispanic inmates will basically take over the church").

5

Absent a connection between the alleged restrictions and the exercise of his religious beliefs, it is unclear that Myrick meets the threshold for a free exercise claim.

From our review of the complaint, Myrick does not indicate any connection between the identity of ushers or frequency of choir practice and his ability to worship as a Seventh-day Adventist.  Myrick does not articulate how choir or usher status relates to practicing his religion so that a court may discern whether a restriction on choir practice or usher status impaired his religious freedom.

Nevertheless, assuming choir practice or being an usher was a part of his religious practice, because DOC allows him alternatives to worship freely, Myrick's right to exercise his religion is not impaired.  DeHart (alternative means of religious expression suffices).  The state has no "affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice."  Mobley, 65 A.3d at 1053 (citation omitted).

Myrick's primary complaints stem from Torres undertaking the position as Chaplain after the death of his predecessor.  Myrick disagrees with Torres' decisions regarding use of the time and resources of the Chaplaincy department.  Decisions regarding the time and resources available to the facility, and allocation of limited time and resources are within a prison official's discretion.  Id.  Further, Myrick is not entitled to the clergyman of his choice.  Id.

In short, we agree with the trial court that Myrick's complaint, on its face, does not state a viable claim for a violation of his First Amendment rights. His complaints as to the frequency of choir practice, or the religious and racial identities of the ushers for services do not show impairment of his right to worship freely. Thus, the trial court properly dismissed Myrick's complaint as frivolous under Rule 240(j).

## B. Prison Litigation Reform Act (PLRA)

To the extent Myrick asserts the PLRA, 42 Pa. C.S. §§6601-08, applies to his claim, Appellant's Brief at 7, that does not alter the result here.

Pursuant to Section 6602(e)(2) of the PLRA, "[n]otwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation … if the court determines … the prison conditions litigation is frivolous or … fails to state a claim upon which relief may be granted." 42 Pa. C.S. §6602(e)(2) (emphasis added). "Prison conditions litigation" is defined as "[a] civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison. The term includes an appeal." 42 Pa. C.S. §6601.

Because Myrick's claim arises under the state and federal constitutions, and relates to conditions of his life in prison, it qualifies as "prison conditions litigation." The trial court determined the litigation is frivolous and fails to state a

7

claim. Accordingly, the PLRA mandates dismissal, regardless of whether Myrick pays the filing fees himself.[5]

## C. Right to Amend Complaint

Further, the trial court did not err in failing to allow Myrick leave to amend his complaint. "Except where an amendment is allowed as of course under Pa. R.C.P. No. 1028, or granted as of right under other Rules of Civil Procedure, the trial court has discretion of whether to allow amended pleadings." Weaver v. Franklin Cnty., 918 A.2d 194, 203 (Pa. Cmwlth. 2007). In the absence of a clear abuse of that discretion, we will not reverse the trial court's decision. Id.

An abuse of discretion occurs where "in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." Tullytown Borough v. Armstrong, 129 A.3d 619, 622 (Pa. Cmwlth. 2015) (citation omitted). From our review of the record, we discern no such abuse of discretion here.

Moreover, amendment is properly denied when a complaint's defects are so substantial that it appears amendment would be futile. Sobat v. Borough of Midland, 141 A.3d 618 (Pa. Cmwlth. 2016). In his brief, Myrick does not mention any additional allegations that, if pled, would state a cause of action here.[6]

---

[5] Moreover, Myrick does not allege he is in imminent danger of serious bodily injury so as to preclude dismissal under Section 6602(f)(2), 42 Pa. C.S. §6602(f)(2).

[6] To the extent Myrick attempted to assert a due process claim, it bears emphasizing that the attachments to his complaint, including the DOC responses to his grievances, undermine any alleged violation of his due process rights. See Certified Record, Item No. 1.

## III. Conclusion

For the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Myrick,                         :
                    Appellant          :
                                       :
        v.                             :   No. 1300 C.D. 2016
                                       :
Rafeal Torres, Ulli Kllemm,            :
Pennsylvania Department of             :
Corrections, Dorina Varner            :

# **O R D E R**

**AND NOW**, this 1st day of May, 2017, the order of the Court of Common Pleas of Montgomery County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene Myrick,                         :
                    Appellant          :
                                       :
           v.                          :
                                       :
Rafeal Torres, Ulli Kllemm,            :
Pennsylvania Department of             :    No. 1300 C.D. 2016
Corrections, Dorina Varner            :    Submitted:  December 16, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                      FILED:  May 1, 2017


          As I cannot agree that Mr. Myrick's claim is frivolous, I must dissent.
Although couched in inarticulate, clumsy (and at times even offensive[1]) *pro se*
filings, Mr. Myrick's point is quite clear: prison officials have taken steps which
interfere with the exercise of his religion, even the limited exercise which must be
afforded prisoners.  This is particularly so, given the nature of Mr. Myrick's
religious beliefs and the specific restrictions which have been placed on them,
restrictions which have not been adequately linked to an institutional need.

          While prisoners may not enjoy the degree of religious liberty equal to
other members of society, they nonetheless retain a freedom to worship in a way

----

[1] Although he raises questions of equal treatment in one aspect of his complaint, Mr. Myrick does so in racially insensitive and obnoxious language.

which does not interfere with their confinement or the penological interests of the correctional institution itself.  In this case, the trial court offers no suggestion that these interests are at the heart of the restrictions imposed on Mr. Myrick.  Instead, that court merely notes that Mr. Myrick's "concerns were thoroughly investigated [by Department of Correction officials … and] no violations were found."  Trial Court opinion at 2.

The trial court does, however, make mention of at least one critical aspect of Mr. Myrick's complaint, recognizing that "it appears from [a] form [attached to the complaint] that Mr. Myrick first objected to Seventh-day Adventists having choir practice on Friday night instead of Wednesday night."  Trial Court opinion at 2, fn. 2.  By this reference alone, the finding that Mr. Myrick's complaint is frivolous [and the majority's affirmance of same] is fatally flawed.

Mr. Myrick alleges that he is a Seventh-day Adventist (SDA).  Of the many characteristics which identify this faith, at least two are implicated in this matter (and unconsciously referenced in the trial court's footnote cited above):  the overwhelming nature of Sabbath adherence; and the importance of music to worship.  According to SDA teaching (and unlike most Christian sects), the Sabbath begins at sundown on Friday and lasts until sundown Saturday.  Sabbath is a time of rest and worship, "with all preparation finished" before its commencement.  SDA Church, Official Statements – Sabbath Observance; https://www.adventist.org/en/information/official-statements/documents/article/go/-/sabbath-observance/  (last visited April 11, 2017).

The role of the Sabbath in Mr. Myrick's life is not yet explained, but that is what evidentiary proceedings are for. However, given the utter importance of the post-sundown-Friday time to the SDA faith, the limiting of choir practice to only one session per week and scheduling that session during the most sacred time on the SDA calendar, when liturgical practice and "preparation" is expected to have ended, cannot be seen as anything other than interference (and in this case, insufficiently explained interference) with Mr. Myrick's religious practice. Contrary to the trial court's opinion, this interference does not "lack[] an arguable basis [] in fact or law," and is thus anything but "frivolous." *See* Trial Court opinion at 3.

Compounding this interference is the role music plays in the SDA faith. As the Sabbath itself is central to SDA theology, music is critical to worship within that theology.[2] Correctional institutions certainly have legitimate reasons for restricting prisoner activities, and may impose restrictions in any number of circumstances. However, when those restrictions conflict with religious exercise, they must be properly rooted. In the present matter, the question remains whether the restriction imposed on SDA musical activities has such a root.

Appellees suggest the applicability of the "reasonableness test" outlined in *Turner v. Safley*, 482 U.S. 78 (1987), which, they argue, requires an inmate raising a First Amendment claim to "show that prison administrators

---

[2] Seventh-Day Adventist Church, Official Statements, A Seventh-Day Adventist Philosophy of Music: "Because God made humans in His image, we share a love and appreciation for music with all His created beings. In fact, music can touch and move us with a power that goes beyond words or most other types of communication… At its purest and best, music lifts our beings into the very presence of God where angels and unfallen beings worship Him in song." http://www.adventist.org/en/information/official-statements/guidelines/article/go/0/a-seventh-day-adventist-philosophy-of-music/ (last visited April 11, 2017)(internal footnotes omitted).

burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Appellees' Brief at 6.[3] Presently, whether *Turner's* four-pronged analysis has been satisfied is unknown since the trial court short-circuited this matter at the embryonic stage. What is clear is that *Turner* requires more than the summary dismissal which occurred here. Where the Supreme Court noted the "important[ce of] inquir[ing] whether prison regulations restricting inmates' First Amendment rights operate[] in a neutral fashion, without regard to the content of the expression," *id*., at 90, the trial court made no such inquiry in this case, allowing instead allegations of First Amendment restriction to die without response rather than be tested in the adversarial process. This cannot satisfy constitutional norms, even in a prison setting.

What is even more disturbing, perhaps, is the outright dismissal of a claim which, although awkwardly couched in First Amendment terms, may easily survive scrutiny in a statutory context. While not specifically raised by Mr. Myrick, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-2000cc-5*, (RLUIPA) "provides greater protection to inmates' free-exercise rights than does the First Amendment… It bars prisons receiving

---

[3] In *Turner*, the Supreme Court noted that "several factors are relevant in determining the reasonableness of the regulation at issue. First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it… A second factor … is whether there are alternative means of exercising the right that remain open to prison inmates… A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally… Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation… By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. *Turner*, 482 U.S. at 89–91(internal citations omitted).

federal funds from substantially burdening an inmate's religious exercise unless the regulation under attack is *the least restrictive way* to advance a compelling state interest." *Cryer v. Spencer*, 934 F. Supp. 2d 323, 331 (D. Mass. 2013)(emphasis added).[4] In the present case, referencing the portion of the complaint cited in the trial court's opinion at footnote 2, and his general allegations of interference with his religious freedoms, Mr. Myrick's claim clearly has an "arguable basis."

Under the present restrictions of which Mr. Myrick complains, critical aspects of SDA theology are involved. Any suggestion that these complaints do not implicate concerns for religious freedoms (even the restricted freedoms in the prison setting) is simply erroneous, yet the trial court's finding of "frivolousness" does precisely that. For this reason alone, it should not be affirmed. Further, the termination of this case in conjunction with Mr. Myrick's request to proceed *in forma pauperis* wrenches these important questions from their proper place in a judicial proceeding and smothers them before any light or scrutiny are cast upon them. No answer has been provided by Appellees, nor even preliminary objections filed which would be subject to response. Instead, the trial court interjected itself at the start of this action and crushed it before it had a chance to develop.[5]

---

[4] In his statement filed pursuant to Pa.R.A.P. 1925(b), Mr. Myrick complains that the trial court's action in denying his request to proceed *in forma pauperis* was in error, since he "could have amended the suit…" Trial Court opinion at 3. Although the trial court did not address the question of amendment, Appellees did in their brief, claiming "the trial court did not abuse its discretion in not granting leave to amend, because it appeared to be reasonably possible that an amendment would be futile." Appellees' brief at 10. Given the potential viability of a RLUIPA claim, it is difficult to imagine how denial of a request to amend, especially in light of the general rule of liberality in allowing such amendment, Pa.R.C.P. No. 1033, could rest on a finding of "futility."

[5] In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court explained the importance of distinguishing between claims which ultimately may fail as a matter of law, and those which are dismissed as frivolous. This distinction is critical when a claim has arguable

Whether Mr. Myrick's claim prevails or fails is not the issue; allowing an important claim, which raises serious issues of religious liberty, to proceed past the starting gate is.  Since the majority affirms the trial court's misapplication of these principles, I am, respectfully, compelled to dissent.

_____
JOSEPH M. COSGROVE, Judge

---

merit but is nonetheless subject to summary dismissal:  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on [Federal] Rule [of Civil Procedure] 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id*. at 328.  In this case, the trial court conflated these two concepts and extinguished the claim prematurely.