IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shane Sigman,                  :
           Petitioner        :
                               :
       v.                         : No. 456 M.D. 2020
                               : SUBMITTED: March 12, 2021
Department of Corrections,     :
           Respondent       :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                             FILED: April 29, 2021

Petitioner Shane Sigman, an inmate currently incarcerated at the State Correctional Institution at Laurel Highlands (SCI-Laurel), has filed a petition for review (Petition) in our original jurisdiction. Therein, Sigman alleges that Respondent Department of Corrections has violated both the federal Americans with Disabilities Act of 1990 (ADA)[1] and its own internal regulations by failing to provide him with legally adequate law library services. Accordingly, Sigman requests that we order the Department to expand and improve such services. The Department has responded with preliminary objections, demurring to the Petition and requesting that we dismiss it in full. After thorough review, we sustain the Department's preliminary objections in part and overrule them in part.

## I. Background

The facts, as recounted by Sigman in his Petition, are as follows: Sigman has been diagnosed as suffering from a number of ailments which render him disabled,

---

[1] 42 U.S.C. §§ 12101-12213.

specifically sleep apnea, carpal tunnel syndrome, and "various mental illnesses that have been compounded by the ongoing pandemic and the increased isolation imposed by the [Department]."[2] Pet., ¶4. As a result, he "has been issued a[n] oxygen concentrator and [a CPAP[3]] machine for his sleep apnea[, as well as] various types of wrist supports for his carpal tunnel syndrome." *Id.* Due to his disabilities, Sigman "is segregated with other ill and disabled inmates on D-[U]nit, a medical unit [at SCI-Laurel that is] divided into two individual housing units designated as 'D-A [U]nit' and 'D-B [U]nit,' each side housing approximately one hundred five (105) inmates." *Id.*, ¶5.

Past practice at SCI-Laurel has been to allow all inmates, including those housed in D-Unit, to make use of the main on-premises law library. *Id.*, ¶6. The main law library, which is located elsewhere in the facility, offers

> services[] consisting of ten (10) computer terminals with Lexis® legal research software enabling inmates to do legal research[,] . . . four (4) terminals with Microsoft WordPad®, [a] resume preparation program, [a] typing tutor program, [an] employment directory program, three (3) typewriters and [a] comprehensive collection of legal treatises, digests, form books[,] and full use of an on-site [p]rinter/copier.

*Id.* This continued until March 17, 2020, when "without any official written explanation being provided[,]" D-Unit inmates were barred from the main law

---

[2] Sigman does not identify the specific mental illnesses from which he suffers.

[3] CPAP is an acronym which stands for "Continuous Positive Airway Pressure." This treatment uses a "machine that includes a mask or other device that fits over [one's] nose or . . . nose and mouth, straps to position the mask, a tube that connects the mask to the machine's motor, and a motor that blows air into the tube. CPAP is used to treat sleep-related breathing disorders including sleep apnea." *CPAP*, NATIONAL HEART, LUNG, AND BLOOD INSTITUTE, https://www.nhlbi.nih.gov/health-topics/cpap (last visited April 28, 2021).

library; this new restriction did not apply to inmates housed elsewhere at SCI-Laurel, who retained the ability to access the main law library on a daily basis. *Id.*, ¶¶7-9.

On or about July 19, 2020, SCI-Laurel opened a "mini" law library in D-Unit, which consists of a single computer terminal that allows legal research to be conducted via Lexis, but does not have any of the other programs available at the main law library. *Id.*, ¶¶10-11. Sigman specifically highlights that the mini law library does not offer word processing software, something which "excludes and prevents [him] and [other] disabled inmates from . . . preparing clear professional quality legal documents, court filings, briefs and correspondences which, could have a better result in courts than [his] illegible hand[]written filings[.]" *Id.*, ¶11.[4] In addition, unlike the main law library, the mini law library does not have a printer/copier, or an "Inmate Legal Reference Aide" to maintain its resources and assist with research. *Id.*, ¶¶12-13. Furthermore, inmates housed in D-Unit are only permitted to have three one-hour-long sessions per week at the mini law library, whereas other inmates at SCI-Laurel are allowed to have five two-and-one-half-hour-long sessions per week at the main law library. *Id.*, ¶¶14-15. Sigman states that the negative effect of the limits placed upon his mini law library usage are exacerbated by the fact that it is not open on Sundays and, in addition, because it doubles as D-Unit's videoconferencing room and is used for that purpose between 8:00 AM and 4:00 PM seven days per week. *Id.*, ¶15. Thus, the mini law library is

---

[4] While Sigman does mention other disabled inmates at times in his Petition, he only does so generally and never specifically states that he is suing on their behalf. *See* Pet., ¶¶8, 11, 13; 6, Wherefore Clause; 9, Wherefore Clause. Therefore, we conclude that he has sued the Department solely in his individual capacity and has not filed an impermissible class-action lawsuit. *See Mobley v. Coleman*, 65 A.3d 1048, 1051 n.1 (Pa. Cmwlth. 2013) (a *pro se* inmate is not allowed to initiate a class action lawsuit, in large part due to the fact that an individual without the proper level of legal education and experience is singularly ill-equipped to represent the interests of others in a court of law).

only open Monday through Saturday, "from 4:00 PM through 9:00 PM [each day], which is [further] divided into five (5), one (1) hour sessions that alternate every other day between 'D-A' and 'D-B' units." *Id.*

On July 30, 2020, Sigman filed his two-count Petition with our Court. In Count I, he argues that the Department, through the mini law library setup at SCI-Laurel, has discriminated against him due to his disabilities, in violation of Title II of the ADA.[5] *Id.*, ¶¶19-21. In Count II, he states that this setup also contravenes DC-ADM 007, a Department-issued inmate policy that governs inmates' access to legal services, including law libraries, which the Department provides at its prisons.[6] *Id.*, ¶¶23-27. Consequently, Sigman requests that we order the Department to provide him with law library "services and activities" in D-Unit that are "similar" to those available to other inmates through SCI-Laurel's main law library, as well as to operate D-Unit's mini law library in a manner which complies with DC-ADM 007. *Id.* at 6, Wherefore Clause; 9, Wherefore Clause.

On October 26, 2020, the Department filed its preliminary objections, through which it demurs to Sigman's Petition and seeks its dismissal in full. Sigman has responded in opposition and, thus, the preliminary objections are ready for our disposition.

---

[5] 42 U.S.C. §§ 12131-12165.

[6] Sigman specifically references the portions of DC-ADM 007 that require mini law libraries at the Department's correctional institutions to be open a minimum eight hours per day, seven days a week, with availability during evenings and on the weekend; set forth that inmates at these institutions are able to use law library facilities for up to three two-hour-long blocks per week; and allow inmates to seek special dispensation for additional time to use these facilities, contingent upon availability and the nature of the legal matter which has prompted the request. Pet., ¶¶23-27; *see id.*, Ex. B (portions of DC-ADM 007). The full version of DC-ADM 007 can be found at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/007%20Access%20to%20Provided%20Legal%20Services.pdf (last visited April 28, 2020).

4

## II. Standard of Review

> In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421 (Pa. Cmwlth. 2018). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id.*

*Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019). "Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief. Any doubt must be resolved in favor of overruling the demurrer." *Jacobs v. Merrymead Farm, Inc.*, 799 A.2d 980, 983 (Pa. Cmwlth. 2002) (internal citations omitted).

## III. Discussion

The Department presents several arguments for our consideration. First, the Department contends that Sigman has not articulated facts showing, for purposes of the ADA, that he is a qualified individual with a disability, or that he was denied public services or programs as a result of this disability and, thus, he cannot pursue a claim under Title II. Department's Br. in Support of Prelim. Objs. at 9-11. Second, it asserts that Sigman has not stated a viable claim regarding his constitutional right to access the court system, as he does not state in his Petition that his ability to pursue a valid legal challenge has actually been harmed by the Department's actions. *Id.* at 11-12. Finally, the Department maintains that DC-ADM 007 is merely "a statement of policy[,]" which does not confer to Sigman any actionable rights and is thus unenforceable in a court of law. *Id.* at 13-14. We address each of these arguments in turn.

The Department's demurrer to Sigman's ADA claim is without merit. Per Section 202 of the ADA, "no qualified individual with a disability shall, by reason

5

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

> In order to prevail on a claim for a violation of Title II of the ADA, a [petitioner] must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from or otherwise denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or discrimination was by reason of the [petitioner's] disability.

*Kenneth S. Hantman, Inc. v. Off. of Unemployment Comp. Tax Servs.*, 928 A.2d 448, 452-53 (Pa. Cmwlth. 2007).

The Department effectively holds the position that Sigman has failed to satisfy any of these three prongs. *See* Department's Br. in Support of Prelim. Objs. at 9-11. However, we disagree. With regard to whether Sigman is a "qualified individual with a disability," Section 201(2) of the ADA defines this phrase as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). In turn, Section 4(a)(1) of the ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in [42 U.S.C. § 12102(3)[7]])." *Id.* § 12102(1).

---

[7] This subsection states:

**(Footnote continued on next page…)**

> [M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. . . . [Furthermore], a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.* § 12102(2)(A)-(B). Congress has specifically directed courts to construe the ADA's definition of "disability . . . in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter . . . [and to interpret t]he term 'substantially limits' . . . consistently with the findings and purposes of the ADA Amendments Act of 2008 [(ADAAA)]."[8] *Id.* § 12102(4)(A)-(B).

---

For purposes of [42 U.S.C. § 12102(1)(C)]:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

> (B) [42 U.S.C. § 12102(1)(C)] shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3). This portion of the ADA's definition of "disability" is not relevant to the instant matter.

[8] "On September 25, 2008, Congress enacted the ADAAA, effective January 1, 2009, in order to reinstate a broad scope of protection under the ADA." *Lazer Spot, Inc. v. Pa. Hum. Rels. Comm'n* (Pa. Cmwlth., No. 459 C.D. 2017, filed February 2, 2018), slip op. at 6 n.9, WL 670621 2018, at *3 n.9; *see* Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a) (unreported Commonwealth Court opinions issued after January 15, 2008 may be cited for their persuasive value). The ADA's findings and purpose section, as amended by the ADAAA, **(Footnote continued on next page…)**

Taking the averments in his Petition as true, as we must at this stage in the proceedings, Sigman suffers from sleep apnea, as well as carpal tunnel syndrome, which respectively impact his abilities to breathe in a normal manner while sleeping and to handwrite documents in a legible way. *See* Pet., ¶¶4, 11. Furthermore, it is indisputable that the Department constitutes a "public entity" under the ADA[9] or that Sigman, due to his incarceration at SCI-Laurel, satisfies the eligibility requirements for receiving services from, and participating in programs of activities offered by, the Department. *Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210-11 (1998).[10] Therefore, Sigman has *prima facie* established that he is a qualified individual with a disability.[11]

In addition, the Petition's averments support the remaining two prongs of the ADA's discrimination test. According to the Petition, the Department has denied Sigman the ability to access SCI-Laurel's main law library and instead only permits him to use D-Unit's mini law library. Pet., ¶¶6, 10-17. The mini law library offers fewer services than the main law library and is available to a diminished degree when compared to the main branch, in terms of both the days and hours in which it is open

makes clear that Congress' intent in passing the ADA was to address, prohibit, and provide strong legal remedies regarding discrimination against disabled persons. *See* 42 U.S.C. § 12101.

[9] Section 201(1) of the ADA defines "public entity" in relevant part as "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(A).

[10] As the Supreme Court itself remarked in *Yeskey*, "[t]he prison law library, for example, is a service (and the use of it an activity), which prisoners are free to take or leave." 524 U.S. at 211.

[11] We note that, though Sigman claims he suffers from "various mental illnesses[]," he does not identify the specific mental illnesses from which he suffers, nor how they substantially limit or have substantially limited one or more of his major life activities. *See* Pet., ¶4. His allegations of mental illness therefore do not provide support for his ADA discrimination claim.

8

and the maximum amount of time that each inmate in D-Unit may use it each week. *Id.* Furthermore, the reason Sigman is unable to access the main law library, and is instead forced to utilize the mini law library's lesser resources, is because he resides in D-Unit, where he is housed along with other infirm inmates due to his disabilities, separately from SCI-Laurel's general population. *Id.*, ¶¶4-5, 9-10. Sigman has thus pled that he has been excluded from availing himself of certain services and activities offered by the Department, *i.e.*, law library services of the specific quality available at the main branch, as well as that his disabilities prompted this exclusion.[12]

---

[12] The Department argues that

> Sigman does not allege that he was denied access to a public service or program, because of his [alleged] physical and mental health disabilities. The attachments to the Petition appear to show that Sigman has been limited to the mini[]law library on his unit not because of his disability. Rather, the Department has decided that inmate movement should be limited due to the COVID-19 pandemic and the need to stop the spread of the highly contagious virus. While the mini[]law library may [not] be his ideal choice of legal services, it is a reasonable and sufficient accommodation for his disability and needs . . . in light of the danger presented by the COVID-19 virus. [Sigman] mentions that the medical and disabled inmates were isolated from the general population starting in March of this year. This no doubt was intended to protect the more vulnerable inmates from possible infection with the deadly coronavirus.

Department's Br. in Support of Prelim. Objs. at 10-11.

This argument fails for two reasons. First, Sigman does passingly mention COVID-19 in his Petition, and attached an exhibit to the Petition, which appears to be a printout of a Department webpage discussing both the pandemic and the Department's response thereto. *See* Pet., ¶4; Ex. A. However, neither Sigman's averments nor the information contained in that exhibit specifically state that inmates housed in SCI-Laurel's D-Unit have been barred from using the facility's main law library on account of the pandemic. The Department's preliminary objection to Count I of Sigman's Petition thus constitutes, in part, an impermissible speaking demurrer. *See Smith v. Pa. Emps. Benefit Tr. Fund*, 894 A.2d 874, 877 n.3 (Pa. Cmwlth. 2006) ("A demurrer may not be a speaking demurrer; it may not aver the existence of facts not apparent from the face of the challenged pleading."). Second, even if this was not the case, the question of whether the mini law library constitutes a reasonable accommodation requires further development of the factual record and, thus, is not resolvable at this stage.

9

Next, we agree with the Department that Sigman has failed to state a valid access to courts claim. Sigman does not expressly state in his Petition that he is making this type of claim and, instead, merely identifies, in Count I, the Department's alleged violations of the ADA and, in Count II, its alleged contravention of DC-ADM 007. *Id.*, ¶¶18-27. Even so, we must recognize two things. First, "[t]he allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys." *Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004). Second,

> Pennsylvania is a "fact pleading" jurisdiction under which courts are presumed to know the law, and petitioners need only plead facts constituting the cause of action, and the courts will take judicial notice of the statute [or constitutional provision] involved. Accordingly, a petitioner filing a complaint in the courts of this Commonwealth is not required to specify the legal theory or theories underlying the complaint. He or she may merely allege the material facts which form the basis of a cause of action.

*Heinly v. Com.*, 621 A.2d 1212, 1215 n.5 (Pa. Cmwlth. 1993). To that end, "[w]here the elements to a cause of action are adequately set forth, a *pro se* complaint will not be dismissed just because it is not artfully drafted." *Williams v. Syed*, 782 A.2d 1090, 1095 (Pa. Cmwlth. 2001). With these points in mind, we conclude that Count II may be reasonably interpreted as alleging that the mini law library's inadequacies have impinged upon Sigman's ability to access the courts, a right that is secured by both the Constitution of the United States and the Pennsylvania Constitution. *See*

10

*Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (citing U.S. CONST. amends. I;[13] V;[14] XIV § 1;[15] art. IV § 2[16]); PA. CONST. art. I § 11.[17]

This does not mean, though, that Sigman's access to courts claim is a viable one. This cause of action is assessed using the same legal standard, regardless of whether it is lodged pursuant to the Constitution of the United States or the Pennsylvania Constitution. *See Young v. Wetzel* (Pa. Cmwlth., No. 792 C.D. 2020, filed Mar. 16, 2021) slip op. at 8, 2021 WL 980254, at *4 (citing *Bronson v. Horn*, 830 A.2d 1092, 1094-95 (Pa. Cmwlth. 2003) and *Moss v. Dep't of Corr.*, 868 A.2d 615, 617-18 (Pa. Cmwlth. 2004)); *Arnold v. Dep't of Corr.* (Pa. Cmwlth., No. 86 M.D. 2013, filed Jan. 28, 2014), slip op. at 8-9, 2014 WL 309633, at *4-*5. This standard requires that an incarcerated litigant plead facts establishing that they have suffered an *actual injury*, in that they must demonstrate that their ability to pursue a specific, "nonfrivolous[] legal claim had been frustrated or was being impeded." *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (footnotes omitted). Furthermore, this

---

[13] The First Amendment establishes, in relevant part, that "Congress shall make no law . . . prohibiting . . . or abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I.

[14] The Fifth Amendment sets forth, in relevant part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V.

[15] Section 1 of the Fourteenth Amendment states, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1.

[16] Section 2 of Article IV reads, in relevant part, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV § 2.

[17] Section 11 of Article I declares, in relevant part: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." PA. CONST. art. I § 11.

11

constitutional right to access attaches only in situations where an inmate seeks "to attack their sentences, directly or collaterally, [or] to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original). Sigman fails to identify in his Petition any specific legal action that was impeded or frustrated by being forced to use the mini law library's more limited services and, therefore, has not articulated a proper access to courts claim.[18]

Finally, we agree with the Department that Sigman cannot take legal action based upon its alleged violation of DC-ADM 007. It is well-settled that statements of policy like this one are different than statutes or substantive administrative rules and, thus, do not in and of themselves carry the force of law. *Weaver v. Dep't of Corr.*, 720 A.2d 178, 180 n.5 (Pa. Cmwlth. 1998). Therefore, "allegations that [the Department] has failed to adhere to its own policies and regulations do not state a [viable] claim for relief." *Paluch v. Dep't of Corr.*, 175 A.3d 433, 437 (Pa. Cmwlth. 2017). Moreover, DC-ADM 007 contains an express disclaimer that it imbues anyone with actionable rights, pertinently providing that it "does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual." DC-ADM 007(VI). We have previously held that this type of clear language "is sufficient to dispel any reasonable expectation that an

---

[18] We note that Sigman claims in his brief that his inability to use SCI-Laurel's main law library, coupled with the more limited legal resources available in D-Unit, prevented him from being able to thoroughly pursue a post-conviction challenge to his carceral sentence and caused him to lose an appeal before the Superior Court. *See* Sigman's Br. in Opposition to Department's Prelim. Objs. at 16-17. However, as similar allegations are not present in his Petition, we cannot consider them in the context of whether he states a legally sufficient access to courts claim therein. *See Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019) ("Our review of preliminary objections is limited to the pleadings and proper attachments.").

12

enforceable right is created by [a Department-issued] policy." *Weaver v. Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003).

## IV. Conclusion

Consistent with the foregoing analysis, we overrule the Department's preliminary objections as to Count I of Sigman's Petition and sustain its preliminary objections as to Count II. Furthermore, we dismiss Count II with prejudice; however, in light of the allegations made by Sigman in his response to these preliminary objections, we grant him 30 days to file an amended petition that contains a clearly articulated access to courts claim. The Department shall have 30 days to respond, calculated from the earlier of either the date Sigman's amended petition is docketed or the passage of the deadline for its filing.

_____
ELLEN CEISLER, Judge

Judge Covey dissents and wishes to be so noted.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shane Sigman,                          :
                    Petitioner         :
                                       :
        v.                             :    No. 456 M.D. 2020
                                       :
Department of Corrections,             :
                    Respondent         :

# **O R D E R**

AND NOW, this 29th day of April, 2021, it is hereby ORDERED:

1. Respondent Department of Corrections' preliminary objections to Count I of Petitioner Shane Sigman's Petition for Review are OVERRULED;

2. Respondent's preliminary objections to Count II of the Petition for Review are SUSTAINED;

3. Count II of the Petition for Review is DISMISSED WITH PREJUDICE;

4. Petitioner shall have thirty (30) days to file an amended petition that contains a clearly articulated denial of access to courts claim;

5. Respondent shall have thirty (30) days to respond, calculated from the earlier of either the date Petitioner's amended petition is docketed or the passage of the deadline for its filing.

_____
ELLEN CEISLER, Judge