KENNETH S. HANTMAN,
INC., Petitioner

v.

OFFICE OF UNEMPLOYMENT COM-PENSATION TAX SERVICES, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 1, 2007.

Decided July 11, 2007.

Joel M. Flink, Philadelphia, for petitioner.

Jane C. Pomerantz, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Kenneth S. Hantman, Inc. (Petitioner) petitions for review of a final decision and order of the Secretary of the Department of Labor and Industry (the Department), denying its request for *nunc pro tunc* review and re-determination of its 2002, 2003 and 2004 contribution rates. We now affirm.

Kenneth S. Hantman was the president and sole owner of Petitioner. Petitioner engaged in the sale of fencing in Huntingdon Valley, Pennsylvania. Petitioner had been formerly known as Eagle Fence Company, Inc.[1] Petitioner first paid wages as an employer subject to the Pennsylvania Unemployment Compensation Law (UC Law)[2] on January 1, 1992. As an employer subject to the UC Law, Petitioner was responsible for the filing of unemployment compensation reports with the Department and for the payment of contributions based upon those reports into the Commonwealth's unemployment fund. Under the UC Law, the Department determines an employer's rate of contribution and thereafter notifies the employer of the same.[3]

The Office of Unemployment Compensation Tax Services (OUCTS) notified Petitioner of its 2002 contribution rate under mailing date of November 30, 2001. This 2002 notice reflects the assignment of a delinquency rate of contribution based upon Petitioner's failure to file a tax report for the first quarter of 2001. OUCTS notified Petitioner of its 2003 contribution rate under mailing date of December 31, 2002. This 2003 notice reflects the assignment of a delinquency rate of contribution based upon Petitioner's failure to file tax reports for the first, third and fourth quarters of 2001 and the second quarter of 2002. Petitioner did not file these tax reports until February of 2003.

OUCTS notified Petitioner of its 2004 contribution rate under mailing date of December 31, 2003. This 2004 notice reflects the assignment of a delinquency rate of contribution based upon Petitioner's failure to pay the contributions, interest and penalties owing on the quarterly reports which were filed in February of 2003. While Petitioner did submit a payment with these quarterly reports at the time of filing, the payment was dishonored by the bank. Petitioner did not resubmit this payment, along with returned check penalties, until June of 2005.

Nevertheless, approximately two months earlier, by letter dated April 11, 2005, Mr. Hantman attempted to appeal the Department's 2002, 2003 and 2004 contribution rate determinations and requested an abatement of all penalties.[4] In this letter, Mr. Hantman alleged that he suffered from a psychological disability and that this disability, coupled with admitted embezzlement by an employee, should result in an abatement of penalties.[5] By letter

---

1. In its brief to this Court, Petitioner indicates that Mr. Hantman essentially sold all of his assets relating to the business in October of 2004.

2. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751—914.

3. Petitioner's mailing address did not change throughout the entire time period at issue here.

4. Petitioner also attempted to appeal its 2005 contribution rate determination. However, the parties later agreed that this determination was no longer at issue. In this letter, Petitioner indicates that it paid penalties in the amount of $3,353.10 for 2002, $3,708.54 for 2003 and $4,157.97 for 2004. (Certified Record at Item No. 13).

5. Mr. Hantman enclosed a copy of the report of his treating psychologist, Dr. John Salerno, with this appeal letter. The embezzlement issue was further detailed in a subsequent letter to OUCTS dated September 8, 2005, which included three confession letters from Petitioner's former office manager, Annemarie Prelle. In this September 8, 2005, letter, Mr. Hantman also included a copy of an IRS form requesting an abatement of penalties relating to federal tax based upon this same disability as well as a letter from the IRS dated April 13, 2005, granting this abatement.

dated November 22, 2005, OUCTS denied Mr. Hantman's appeal and request for abatement of penalties as untimely, noting that an employer only has ninety days from the mailing date of the contribution rate notice within which to file an appeal of a rate determination. Mr. Hantman thereafter requested review by the Unemployment Compensation Tax Review Office (Tax Review Office).

OUCTS forwarded all documents in Petitioner's file to the Tax Review Office, including the 2002, 2003 and 2004 contribution rate notices, Mr. Hantman's appeal letter, Mr. Hantman's September 8, 2005, letter, all attachments to Mr. Hantman's letters and the denial letter dated November 22, 2005. The Department thereafter appointed a Tax Review Officer to act as the presiding officer on behalf of the Secretary for purposes of hearing and certifying the record. A hearing was thereafter scheduled and held before this presiding officer on July 20, 2006.

Mr. Hantman appeared at this hearing without counsel and testified on behalf of Petitioner, relating a history of his psychological problems. Mr. Hantman testified that as a result of his psychological disability, he became "almost phobic about forms." (Certified Record at Item No. 3; N.T., July 20, 2006, Hearing, p. 38). Mr. Hantman noted that he relied on third parties to fill out forms. Mr. Hantman also noted that such reliance was to his detriment, referring to the aforementioned embezzlement by his former office manager.

In opposition, OUCTS presented the testimony of its operations manager, Colleen Williams. Ms. Williams described the

contribution rate notices, indicating that the last day to appeal said notice is specifically included directly beneath the actual rate determination. Ms. Williams also indicated that the 2002, 2003 and 2004 notices sent to Petitioner were never returned as undelivered. Additionally, Ms. Williams noted that the first challenge to these notices was not received by OUCTS until April 11, 2005.

Following the hearing, Petitioner submitted a brief in support of its appeal. OUCTS did not file a responsive brief. The presiding officer then forwarded the certified record to the Secretary. By final decision and order dated December 6, 2006, the Secretary denied Petitioner's request for *nunc pro tunc* review and redetermination of its 2002, 2003 and 2004 contribution rates. In rendering his decision, the Secretary specifically rejected the testimony of Mr. Hantman regarding the nature of his disability as not credible. The Secretary further noted the lack of credible evidence supporting consideration of Petitioner's appeal of its 2002, 2003 and 2004 contribution rates *nunc pro tunc*. Petitioner thereafter filed a petition for review with this Court.

On appeal,[6] Petitioner argues that the Secretary erred as a matter of law in denying his appeal *nunc pro tunc*. We disagree.

Section 301(e)(2) of the UC Law provides, in relevant part, as follows:

The department shall promptly notify each employer of his rate of contribution for the calendar year ... The determination of the department of the employer's rate of contribution shall become

---

6. Our scope of review of the Secretary's decision is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether there has been an error of law or whether a petitioner's constitutional rights have been violated. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Ourstaff, Inc. v. Department of Labor and Industry,* 749 A.2d 560 (Pa.Cmwlth.2000).

conclusive and binding upon the employer, unless within ninety (90) days after the mailing of notice thereof to the employer's last known post office address the employer files an application for review, setting forth his reasons therefore. . . .

43 P.S. § 781(e)(2). Petitioner does not deny that it failed to file an application for review within the prescribed ninety days for each of the rate determinations at issue, i.e., 2002, 2003 and 2004. Rather, Petitioner alleges that his untimely appeal should be excused based upon his psychological disability.

■ "It is well settled that the statutory time limit for filing an appeal is mandatory in the absence of fraud or manifestly wrongful or negligent conduct of the administrative authorities." *Blast Intermediate Unit No. 17 v. Unemployment Compensation Board of Review,* 165 Pa. Cmwlth. 513, 645 A.2d 447, 449 (1994). In other words, an appeal *nunc pro tunc* was initially limited to circumstances of fraud or a breakdown in the court's operations. *Criss v. Wise,* 566 Pa. 437, 781 A.2d 1156 (2001).

■ However, in *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979), our Supreme Court expanded the limited exceptions for allowing an appeal *nunc pro tunc* to include a situation where (1) the appeal was filed late as a result of non-negligent circumstances, either on appellant's part or on the part of his counsel, (2) the appeal was filed shortly after the expiration date and (3) the appellee was not prejudiced by the delay. These exceptions were further expanded in *Cook v. Unemployment Compensation Board of Review,* 543 Pa. 381, 671 A.2d 1130 (1996), wherein the Court allowed an appeal *nunc pro tunc* due to the appellant's unexpected illness and hospitalization which resulted in a late filing. Nevertheless, the party attempting to file an appeal nunc pro tunc carries a "heavy burden to justify an untimely appeal." *Blast Intermediate Unit No. 17,* 645 A.2d at 449.

■ In the present case, we agree with the Secretary that the record lacks credible evidence supporting consideration of Petitioner's appeal of its 2002, 2003 and 2004 contribution rates *nunc pro tunc.* Petitioner herein did not file the appeal shortly after the expiration date relative to the application contribution rates at issue. Rather, Petitioner's appeal was not filed until three years, two years and one year, respectively, after the expiration date relative to those rate determinations. Moreover, the Secretary rejected the testimony of Mr. Hantman regarding the reasons underlying his untimely appeal as not credible. As the Secretary noted in his decision, despite Mr. Hantman's claimed psychological disability and his inability to complete forms, Mr. Hantman did submit previously unfiled tax reports to OUCTS along with a payment in February of 2003 and he did complete a form requesting an abatement of penalties from the IRS in October of 2004. Thus, we see no error on the part of the Secretary in refusing to permit Petitioner's appeal *nunc pro tunc.*

■ Next, Petitioner argues that the Secretary violated Mr. Hantman's rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12165, by failing to accommodate his covered disability. Again, we disagree.

■ The ADA prohibits public entities from excluding, denying access to or otherwise discriminating against any person because of a disability. *See* 42 U.S.C. § 12132. In order to prevail on a claim for a violation of Title II of the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from or otherwise denied

the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Kramer v. Port Authority of Allegheny County,* 876 A.2d 487 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 586 Pa. 743, 891 A.2d 735 (2005).

■ Under the ADA, the term "disability," with respect to an individual, means "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Merely having an impairment does not qualify a person as suffering from a "disability" under the ADA. *See Toyota Motor Manufacturing v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The ADA regulations define "major life activities" as including such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In the present case, Petitioner alleges that Mr. Hantman suffers from a psychological disability such that he is unable to complete forms. However, the record lacks evidence establishing that such a disability is recognizable under the ADA. Even if this was a recognized disability under the ADA, the fact remains that the Secretary rejected the testimony of Mr. Hantman regarding his alleged psychological disability as not credible. While the Secretary did not specifically reject the report of Mr. Hantman's treating psychologist, Dr. Salerno, the Secretary did conclude that the record lacks credible evidence to accept the untimely filing and to consider the appeal *nunc pro tunc.* We believe that this conclusion by the Secretary necessarily encompasses a rejection of the report of Dr. Salerno.[7] Thus, we cannot say that the Secretary violated Mr. Hantman's rights under Title II of the ADA.

Accordingly, the final decision and order of the Secretary is affirmed.

### *ORDER*

AND NOW, this 11th day of June, 2007, the final decision and order of the Secretary of the Department of Labor & Industry is hereby affirmed.

---

**7.** Contrary to Petitioner, we see no error, or, at the very most, harmless error, on the part of the Secretary in failing to specifically address the report of Dr. Salerno. Further, we reject Petitioner's argument that OUCTS was required to hire its own expert to evaluate Mr. Hantman. Petitioner cites no authority in support of this proposition and, as noted above, the burden remained on Petitioner to justify its untimely appeal.