# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Thomas,            :
               Appellant   :
                         :   No. 905 C.D. 2018
           v.           :
                         :   Submitted: August 31, 2018
C/O Jason Pyle, C/O James    :
Mainello, Captain B. Harris,    :
HEX. S. Ellenberger, Unit Manager  :
M. Goss, D. Supt. J. Thomas,   :
Acting Deputy Supt. S. Walters,  :
K. Kauffman Supt., C. HEX Joseph H.  :
Dupont, Sued in Their Individual and  :
Official Capacity           :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: November 20, 2018

Gregory Thomas (Thomas) appeals, *pro se*, from the March 22, 2018 order of the Court of Common Pleas of Huntingdon County (trial court), which dismissed Thomas' civil complaint (Complaint) against several employees of the Pennsylvania Department of Corrections (DOC), including corrections officer Jason Pyle; corrections officer James Mainello; Captain B. Harris; Hearing Examiner S. Ellenberger; Unit Manager M. Goss; Deputy Superintendent J. Thomas; Acting Deputy Superintendent S. Walters; Superintendent K. Kauffman; and Chief Hearing Examiner Joseph H. Dupont, (collectively, Defendants). The trial court dismissed the

Complaint pursuant to Rule 240(j)(1) of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. No. 240(j)(1), based on its determination that the Complaint was frivolous. For the reasons that follow, we affirm.

**Background**

Thomas, who was at all times relevant to the Complaint an inmate at State Correctional Institution Huntingdon (SCI-Huntingdon), initially filed his Complaint against Defendants in this Court's original jurisdiction on December 21, 2017. We transferred the matter to the trial court on March 6, 2018.

Thomas alleged in his Complaint that he suffers from a hearing disability, wears a hearing aid, and that SCI-Huntingdon's Medical Department had record of his hearing disability. (Complaint ¶¶11-12.) Thomas also alleged that he suffers from depression, which is listed on his prison medical records. *Id.* ¶33.

Thomas alleged that at 7:22 a.m. on August 22, 2017, he thought he heard his name being called on the prison intercom system. *Id.* ¶14. He then reported to the prison officer's desk, where corrections officer Defendant Pyle allegedly told Thomas that he had been attempting to reach him since 6:00 a.m. to take a urine test. *Id.* ¶16. After Thomas explained that he cannot hear well, Defendant Pyle and another corrections officer, Defendant Mainello, allegedly told Thomas that he only hears when he wants to, which humiliated Thomas because he was unable to hear what the two corrections officers were saying to him. *Id.* ¶¶17-19. Thomas tried to explain that he was unable to hear them. *Id.* ¶20. He then went back to his cell to retrieve his ID Card, and reported to the center for the urine test. *Id.* ¶ 22. After Thomas took the urine test, Defendant Mainello escorted Thomas to his cell and told him to pack up his belongings because he was being moved to solitary confinement in the restrictive

2

housing unit (RHU). *Id.* ¶¶25-26. Thomas alleged he was then placed "in a suicide cell with a bed made of cement for [three] days." *Id.* ¶29.

Thomas further averred that in August 2018, Defendant Hearing Examiner Ellenberger found him guilty of refusing to obey an order, "because Thomas could not hear the order." *Id.* ¶31. Defendant Hearing Examiner Ellenberger allegedly told him "if you can't hear you should not be here[;] that is not going to fly." *Id.* ¶32. Thomas was then placed on a 30-day cell restriction, lost his prison job, lost his "once a year picnic visit," and lost all of his privileges. *Id.* ¶32.

Although Thomas alleges he was placed in solitary confinement and lost his privileges for not hearing an order, Thomas attached a number of exhibits to the Complaint containing facts contrary to his allegations that his punishment was unjustified. Exhibit D to the Complaint is a July 24, 2017 Preliminary Hearing Report written by Defendant Hearing Examiner Ellenberger. (Complaint, Ex. D.) Ellenberger wrote that Thomas stated he had hearing issues, could not hear the announcement over the intercom, that he could not hear the officers over the intercom, and that he could not hear the officers talking to him. *Id.* The report also stated that the Hearing Examiner believed the written report of Defendant Pyle over Thomas' denial. *Id.* Corrections officer Pyle's July 24, 2017 report found that "Thomas did not acknowledge several pages over the intercom to report to the desk," and that once he reported to the desk, **"he refused the direct order to go to the center point for a urine test."** *Id.* (emphasis added). **"Instead, [Thomas] became argumentative and proceeded to his cell anyway."** *Id.* (emphasis added). The hearing examiner concluded that a preponderance of evidence existed to support Thomas' misconduct charge. *Id.*

3

Exhibit A to the Complaint is a memorandum written by Superintendent Kauffman to Thomas, which addressed Thomas' appeal regarding his misconduct charge. (Complaint, Ex. A.) The memorandum noted that Thomas stated he has a hearing disability and did not hear the orders given. *Id.* The memorandum also stated that **"[a]fter being ordered to the center several times . . . you then became argumentative and proceeded to your cell anyway. Based on your behavior, it seems highly unlikely you did not hear the order to go to the center. I find the evidence is sufficient to support the hearing examiner's decision."** *Id.* (emphasis added).

Thomas also averred that Defendant Captain Harris was the "shift commander" at SCI-Huntingdon on the morning of August 22, 2017 and, thus, was responsible for providing the safeguards of the Americans with Disabilities Act[1] (ADA) guidelines for handicapped prisoners like Thomas, by making sure corrections officers complied with the DOC policy with respect to handicapped inmates. *Id.* ¶¶44-45. According to the Complaint, Captain Harris failed to ensure corrections officers were familiar with the DOC policy on handicapped inmates, and this failure resulted in Thomas being placed in solitary confinement for having a hearing impairment and suffering emotional depression. *Id.* ¶¶47-48. This failure also allegedly caused Pyle and Mainello to continue their prejudicial treatment of Thomas, and Harris' tolerance for excessive punishment toward handicapped individuals caused corrections officers to disobey the DOC policy on handicapped and mental health inmates like Thomas. *Id.* ¶¶49, 51.

Additionally, the Complaint contended that Superintendent Kauffman had responsibility for the training and supervision of corrections officers regarding

---

[1] 42 U.S.C. §§12101-12213.

4

DOC's policy and ADA guidelines on handicapped inmates, but failed to do so, which resulted in Thomas being placed in the RHU and suffering from depression. *Id.* ¶¶52-54. Thomas further alleged that Defendant Chief Hearing Examiner Dupont's failure to require hearing examiners to comply with DOC policy and ADA guidelines resulted in Hearing Examiner Ellenberger confining Thomas to 30 days of cell confinement and the loss of Thomas' prison job. *Id.* ¶56.

Thomas noted that shortly after serving 30 days of cell confinement, he was transferred to SCI-Albion, which is over nine hours from his home. *Id.* ¶60. Thomas' transfer to SCI-Albion, his placement in the RHU, and his 30-day cell confinement have allegedly caused Thomas emotional distress and depression. *Id.* ¶¶60-63. In his request for relief, Thomas asks that he be transferred to SCI-Chester so that he can receive appropriate medical care for his depression and receive family visits. *Id.* ¶D.

As best as can be discerned from the Complaint, Thomas brought six separate claims against Defendants. In Count I, Thomas asserted an Eighth Amendment claim, alleging that Defendants Pyle, Mainello, Captain Harris, and Hearing Examiner Ellenberger violated his right to be free from cruel and unusual punishment by inflicting excessive confinement upon him for having a hearing disability. (Complaint ¶67). Count II also alleged an Eighth Amendment violation, asserting that Defendants Goss, Thomas, Walters, Kauffman, and Dupont violated Thomas' right to be free from cruel and unusual punishment by failing to intervene when they saw Thomas was an inmate with a hearing disability. *Id.* ¶69. Count III asserted a third Eighth Amendment violation, alleging that Defendants Harris, Ellenberger, Goss, Thomas, Walters, Kauffman, and Dupont violated Thomas' right to be free from cruel and unusual punishment due to their deliberate indifference to

5

Thomas' hearing disability, "inasmuch as they failed to provide the ADA protection" when they "saw the confinement that [a]ffected Plaintiff['s] mental health of depression for over 30 days." *Id. ¶71.*

Count IV of the Complaint alleged an ADA violation against Defendants Kauffman, Thomas, and Walters for failing to train, supervise, and discipline corrections officers and for tolerating, encouraging, and acquiescing in violating ADA guidelines and laws on inmates with hearing disabilities. *Id. ¶73.* Count V also alleged an ADA violation, asserting that Defendants Kauffman and Harris failed to screen and train corrections officers before assignment to state correctional institutions. *Id. ¶75.* Finally, Count VI alleged a claim of intentional infliction of emotional distress against all of the named Defendants. *Id. ¶¶77-90.*

On March 22, 2018, the trial court dismissed Thomas' Complaint as frivolous under Pa.R.C.P. No. 240(j)(1).[2] The trial court's order noted that, although Thomas alleged civil rights violations stemming from his confinement in the RHU, "[a]fter a review of the Department of Corrections' misconduct reports and appeal documentation attached to Plaintiff's Complaint," it was "apparent that the internal discipline administered was lawful, and not a result of Plaintiff's stated disability. In fact, the defense of Plaintiff's internal misconduct litigation centered on his hearing

---

[2] Rule 240(j)(1) provides that:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed *in forma pauperis*, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

Pa.R.C.P. No. 240(j)(1).

6

disability. This defense was considered and rejected throughout the internal discipline process." (Trial court order, March 22, 2018.)

Thomas timely appealed from the trial court's March 22, 2018 order.[3] On April 6, 2018, the trial court issued an order directing Thomas to "file of record a Statement of Errors Complained of on Appeal within 21 (twenty-one) days from this date. Said Statement shall be filed of record with the Prothonotary **and served on this Court and opposing counsel**." (Trial court order, April 6, 2018) (emphasis added). The trial court advised that "[a]ny issue not properly raised shall be deemed waived." *Id.* On April 20, 2018, Thomas filed his Statement of Errors Complained of on Appeal (Statement) with the Prothonotary. The Statement's Certificate of Service indicates that Defendants were served with a copy of the Statement, but does not reflect that separate service was made on the trial court. On June 4, 2018, the trial court issued its Rule 1925(a) opinion,[4] which contained similar reasoning to that of its March 22, 2018 order. (Trial court op. at 1-2.)

---

[3] The appeal was initially filed with the Superior Court, which transferred the matter to this Court.

[4] Rule 1925(a)(1) of the Pennsylvania Rules of Appellate Procedure provides, in relevant part:

> Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P. 1925(a)(1).

## Discussion

On appeal,[5] Thomas asserts a number of issues. Although we find it difficult to understand the precise nature of the issues that Thomas raises on appeal, he appears to argue that he sufficiently pled his claim relating to properly training and supervising staff and that the trial court erred in dismissing the Complaint rather than granting him leave to amend. Thomas also appears to allege that SCI-Huntingdon does not provide ADA programs and treatment activities for handicapped inmates, and that the trial court erred in focusing on Thomas' misconduct report, instead of focusing on the alleged lack of training and programs for handicapped individuals as well as the punishment Thomas received for having a disability. He also contends that the Complaint demonstrates Defendants engaged in a pattern of abuse. Finally, Thomas maintains Defendants punished him for filing complaints by transferring him to a facility that was nine hours from his home, instead of transferring him to the SCI-Graterford or SCI-Chester facility, as he requested.

Before addressing the issues raised by Thomas, however, we must first address an issue raised by Defendants. Defendants argue that Thomas failed to preserve any issues on appeal because he did not serve the trial court with a copy of his Statement. Accordingly, we must first consider whether Thomas has waived all of his issues on appeal because he did not serve his Statement on the trial court.

Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure states, in relevant part:

> **b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.--**
> -If the judge entering the order giving rise to the notice of

---

[5] "Appellate review of a decision dismissing an action pursuant to Pa.R.C.P. No. 240(j)(1) is limited to determining whether an appellant's constitutional rights have been violated and whether the trial court abused its discretion or committed an error of law." *Jones v. Doe*, 126 A.3d 406, 408 n.3 (Pa. Cmwlth. 2015).

appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and **serve on the judge** a concise statement of the errors complained of on appeal ("Statement").

(1) *Filing and service*.--Appellant shall file of record the Statement and concurrently shall serve the judge. Filing of record and service on the judge shall be in person or by mail as provided in Pa.R.A.P. 121(a) . . .

(2) *Time for filing and service*.--The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement. . . .

(3) *Contents of order*.--The judge's order directing the filing and service of a Statement shall specify:

> (i) the number of days after the date of entry of the judge's order within which the appellant must file and serve the Statement;
>
> (ii) that the Statement shall be filed of record;
>
> (iii) that the Statement shall be **served on the judge** pursuant to paragraph (b)(1);
>
> (iv) that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived.

(4) *Requirements; waiver*.

. . .

> (vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

Pa.R.A.P. 1925(b) (emphasis added).

9

The requirements of Rule 1925(b) are strictly enforced. As explained by our Supreme Court, in order to preserve their issues on appeal, "[a]ppellants must comply whenever the trial court orders them to file a Statement." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). "[F]ailure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised." *Commonwealth v. Schofield*, 888 A.2d 771, 774 (Pa. 2005). Moreover, "intermediate appellant courts do not have the discretion to countenance deviations from the Rule's requirements." *Commonwealth v. Hill*, 16 A.3d 484, 492 (Pa. 2011). As further explained by our Supreme Court:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, **when so ordered**; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule. We yet again repeat the principle first stated in *Lord* that must be applied here: In order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to Pa.R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.

*Id.* at 494 (emphasis added) (footnote and internal quotation marks omitted).

One particular "bright line rule" is the requirement that an **appellant serve the Statement on the trial court when so ordered**, in addition to filing it with the county prothonotary. *Egan v. Stroudsberg School District*, 928 A.2d 400, 402 (Pa. Cmwlth. 2007). In *Egan*, although the appellant filed her Statement with the prothonotary, because she had not also served her Statement upon the lower court and was ordered to do so, we concluded she had failed to comply with Rule 1925(b) and, thus, failed to preserve any issues on appeal. *Id*; *see also Commonwealth v. $766.00 U.S. Currency*, 948 A.2d 912, 916 (Pa. Cmwlth. 2008) (holding that appellant's failure to serve her Statement on the lower court per its order resulted in waiver).

Two recent unreported opinions[6] of this Court contain facts that are nearly identical to the instant case. In *Caraballo v. Dupont* (Pa. Cmwlth., No. 65 C.D. 2018, filed July 16, 2018), an inmate at SCI-Huntingdon filed a complaint in the same trial court as this matter. *Id*., slip op. at 1. After the trial court dismissed the complaint as frivolous and the appellant appealed, the same trial judge as here instructed the appellant to both file the Statement with the prothonotary and **serve it on the trial court**, using identical language as the trial court's April 6, 2018 order from this case. *Id.*, slip op. at 7. Although the appellant did file his Statement with the prothonotary, he failed to serve the Statement on the trial judge. *Id.*, slip op. at 13. We concluded that the trial court's order complied with the requirements of Pa.R.A.P. 1925(b) and that the appellant had not complied with the "bright line rule" of serving his Statement on the trial court; accordingly, we quashed the appeal. *Id.*, slip op. at 14.

Similarly, in *Serrano v. Dupont* (Pa. Cmwlth., No. 80 C.D. 2018, filed August 17, 2018), an inmate filed a complaint in the same trial court as the instant case, which was also dismissed as frivolous. *Id.*, slip op. at 1. Using identical language

---

[6] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

as the trial court's April 6, 2018 order in this case, the same trial judge instructed the appellant to file a Statement with the prothonotary and serve it on the trial court. *Id.*, slip op. at 3. Even though the Appellant filed the Statement, **because he did not serve it on the trial judge** we concluded he failed to comply with Pa.R.A.P. 1925(b) and quashed the appeal. *Id.*, slip op. at 6; *see also Clad Management, LLC v. Department of Transportation* (Pa. Cmwlth., No. 819 C.D. 2016, filed April 3, 2017), slip op. at 10-11 (quashing appeal because appellant had waived all issues by failing to serve the trial judge with Statement).

Here, the trial court's April 6, 2018 order complied with Pa.R.A.P. 1925(b) because it instructed Thomas to "file[] of record with the Prothonotary and serve[] on this Court" his "Statement" and that "[a]ny issue not properly raised shall be deemed waived." (Trial court order, April 6, 2018.) While Thomas did timely file his Statement with the prothonotary, he failed to serve it on the trial court. Based on our Supreme Court precedent, which applies a bright line waiver rule for non-compliance with Pa.R.A.P. 1925(b), as well as this Court's nearly identical cases of *Caraballo* and *Serrano*,[7] which we find persuasive, we conclude that because Thomas

---

[7] We note that unlike here, where the trial court did not address waiver in its Rule 1925(a) opinion but addressed the merits of Thomas' appeal, in both *Caraballo* and *Serrano* the same trial court concluded in its 1925(a) opinions that the appellants had waived all issues on appeal for failing to serve their Statements on the trial court. *See Serrano*, slip op. at 3; *Caraballo*, slip op. at 7-8. However, under Pa.R.A.P. 1925(b), it is irrelevant to our analysis whether the trial court finds waiver or chooses to address the case on the merits. As the Supreme Court held in *Hill*, "Rule 1925 violations may be raised by the appellate court *sua sponte*." 16 A.3d at 494. Moreover, this Court has repeatedly held that it is of no moment whether the lower court addresses the issues on the merits or chooses to find waiver because, if the appellant fails to comply with the lower court's order regarding timely filing and serving a Rule 1925(b) Statement, all issues on appeal are automatically waived. *See Paluch v. Beard*, 182 A.3d 502 (Pa. Cmwlth. 2018) (holding that despite lower court addressing merits of issues on appeal in 1925(a) opinion, all issues on appeal were waived because appellant filed untimely Statement); *Jenkins v. Fayette County Tax Claim Bureau*, 176 A.3d 1038, 1041-42 (Pa. Cmwlth. 2018) (holding that even though lower court addressed merits of issues appealed in 1925(a) opinion, appellant's failure to timely comply with lower court's order to file the Statement

did not serve the trial court with his Statement as required by Pa.R.A.P. 1925(b) and the trial court's April 6, 2018 order, all of Thomas' issues raised on appeal are waived.[8,9]

automatically waived all issues on appeal); *see also Shaffer v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1376 C.D. 2017, filed August 16, 2018), slip op. at 10-12 (holding that even though Pa.R.A.P. 1925(b) waiver was neither raised by parties nor lower court, appellant's untimely filing of the Statement automatically waived all issues on appeal); *North Coventry Township v. Tripodi* (Pa. Cmwlth., No. 851 C.D. 2017, filed June 4, 2018), slip op. at 7, 9-10 (holding that despite lower court addressing merits of issues on appeal in Rule 1925(a) opinion, appellants failure to serve the Statement on trial judge resulted in all issues being waived on appeal); *Davis v. Bryant* (Pa. Cmwlth., No. 2398 C.D. 2011, filed December 13, 2012), slip op. at 3, 8 (holding that the fact the lower court issued a Rule 1925(a) opinion addressing merits of issues raised on appeal was irrelevant to application of the automatic waiver rule; because appellant failed to comply with lower court order requiring her to file of record and serve trial judge, all issues were waived on appeal).

[8] As noted in our earlier discussion, the trial court dismissed the Complaint pursuant to Pa.R.C.P. No. 240(j)(1), which provides that when a party has filed a petition for leave to proceed *in forma pauperis* simultaneous with the filing of the complaint, the trial court may, prior to acting upon the petition, dismiss the action if it decides it is frivolous. Pa.R.C.P. No. 240(j). When Thomas initially filed his Complaint in this Court's original jurisdiction, Thomas also filed an application for leave to proceed *in forma pauperis*, which we granted. Once the case was transferred to the trial court, Thomas' *in forma pauperis* status was not revoked, nor did he file a renewed petition for leave to proceed *in forma pauperis* with the trial court. Thus, no petition to proceed *in forma pauperis* was pending when the trial court dismissed the Complaint. However, section 6602 of the Judicial Code, 42 Pa.C.S. §6602, permits a court to dismiss prison conditions litigation at any time, regardless of whether a filing fee has been paid, if it determines "the prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief." *Id.*; *see also Paluch v. Palakovich*, 84 A.3d 1109, 1112 (Pa. Cmwlth. 2014) (holding that section 6602 of the Judicial Code permits courts to dismiss prison conditions litigation at any time if it determines action is frivolous). Accordingly, the trial court could still have dismissed the Complaint pursuant to 42 Pa.C.S. §6602.

[9] Thomas alleged in his Complaint that he was placed in the RHU for three days, confined to his cell for one month, lost his prison job and other privileges, and transferred to SCI-Albion, which is over nine hours from his home, because he failed to hear an order due to his hearing disability. Thomas alleged that the punishment he received violates his rights under the Eighth Amendment to

the United States Constitution, his rights under the ADA, and constituted an intentional infliction of emotional distress.

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In order to prevail on an Eighth Amendment excessive force claim against a corrections officer, an inmate must demonstrate that the officers inflicted upon him pain that was "unnecessary and wanton." *Hudson v. Macmillan*, 503 U.S. 1, 5 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Among unnecessary and wanton infliction of pain are those that are totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal quotation marks omitted). Moreover, where the action of the corrections officers is taken in response to a prison disturbance, the question of whether the harm was unnecessary and wanton "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically." *Hudson*, 503 U.S. at 5; *Whitley*, 475 U.S. at 319. The Eighth Amendment also prohibits penalties imposed on prisoners that are "grossly disproportionate to the offense." *Hutto v. Finney*, 437 U.S. 678, 685 (1978). Additionally, the Eighth Amendment proscribes the "deliberate indifference" to "inhumane conditions of confinement." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

Regarding Thomas' ADA claim, under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To prevail on a claim under Title II of the ADA, a plaintiff must demonstrate the following:

> (1) he is a qualified individual with a disability; (2) he was either excluded from or otherwise denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability.

*Kenneth S. Hantman, Inc. v. Office of Unemployment Compensation Tax Services*, 928 A.2d 448, 452-53 (Pa. Cmwlth. 2007) (citing *Kramer v. Port Authority of Allegheny County*, 876 A.2d 487, 493 (Pa. Cmwlth. 2005)).

Finally, to prevail on an intentional infliction of emotional distress claim, the plaintiff must establish that the conduct was (1) extreme and outrageous; (2) intentional or reckless; (3) caused emotional distress; and (4) the distress was severe.[9] *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997).

While the record demonstrates that Thomas has previously filed grievances with DOC regarding the conditions of his confinement, it is unclear whether those grievances included the allegations contained within Thomas' Complaint that he has been unjustifiably permanently removed from his job and has been unfairly transferred to a facility nine hours from his home, which prevents

**Conclusion**

For the foregoing reasons, we are constrained to conclude that Thomas waived all issues on appeal and, thus, we affirm the order of the trial court.

_____
PATRICIA A. McCULLOUGH, Judge

---

him from receiving family visits. Nevertheless, we are unable to address these issues here because we are constrained to find waiver.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Thomas,                :
             Appellant      :
                           :   No. 905 C.D. 2018
          v.               :
                           :
C/O Jason Pyle, C/O James     :
Mainello, Captain B. Harris,     :
HEX. S. Ellenberger, Unit Manager  :
M. Goss, D. Supt. J. Thomas,     :
Acting Deputy Supt. S. Walters,   :
K. Kauffman Supt., C. HEX Joseph H.  :
Dupont, Sued in Their Individual and  :
Official Capacity                :

## ***ORDER***

AND NOW, this 20th day of November, 2018, the order of the Court of Common Pleas of Huntingdon County, dated March 22, 2018, is hereby affirmed.

 

 

_____
PATRICIA A. McCULLOUGH, Judge